THE CAMDEN HORSE RAILROAD COMPANY v. THE WEST JERSEY TRACTION COMPANY ET AL.

1. Authority to locate the tracks of a traction company under the provisions of the act of March 14th, 1893 (*Pamph. L.*, p. 302), or to grant permission to such a company to construct, maintain and operate a street railroad upon the streets of a city, under the act of May 16th, 1894 (*Pamph. L.*, p. 374), can only be exercised by the city council after giving the notices required by said acts and according a hearing to persons interested.

2. The required hearing must be accorded before any step is taken by council in pursuance of such authority.

3. If no hearing is accorded at the time fixed by notice and the hearing is not adjourned to another day, authority of the council to act under the act of 1894 ceases at least until another notice is given.

On *certiorari* removing an ordinance and proceedings of the city council of Camden.

Argued at February Term, 1895, before Justices VAN SYCKEL, MAGIE and GARRISON.

For the prosecutor, *David J. Pancoast* and *Edward A. Armstrong.*

For the West Jersey Traction Company, *Thomas E. French.*

The opinion of the court was delivered by

MAGIE, J.   The Camden Horse Railroad Company, the prosecutor of this *certiorari*, assails the validity of the ordinance contained in the return which was passed by the city council of Camden on October 25th, 1894, and which located the tracks of the West Jersey Traction Company (which will be called the defendant) and gave it permission to construct, maintain and operate a street railroad in certain streets of that city.

It is conceded by counsel for defendant that the power of the city council to pass such an ordinance is obtained from and must be exercised in the manner prescribed by the "Act to authorize the formation of traction companies for the construction and operation of street railways or railroads operated as street railways and to regulate the same," approved March 14th, 1893 (*Pamph. L., p.* 302), and the "Act to regulate the construction and maintenance of street railroads in this state," approved May 16th, 1894.   *Pamph. L., p.* 374.

The former of these acts authorizes the organization of corporations to construct and operate street railways on routes, a description of which has been filed in the office of the secretary of state, with the consent of the municipalities in which the routes are laid, and it expressly empowers the governing bodies of such municipalities to locate the tracks conformably to the routes designated.   The latter act prescribes that in addition to the provisions and restrictions previously required, no street railroad shall be constructed upon any street in any municipality except upon the consent of its governing body, expressed in the manner described in the act.

The provisions of the act of 1893 respecting the location of tracks are not affected by anything contained in the act of 1894, and remain obligatory upon corporations formed thereunder.

The provision of the act of 1893 respecting the consent of the municipalities has obviously been superseded or modified by the act of 1894, and a corporation formed under the first act must, in order to construct its railroad, not only procure a

location of its tracks as required by the act of 1893, but also a permission or consent of the municipality as required by the act of 1894.

Both acts authorize municipal action only after notice and hearing. The requirements of the two acts slightly differ. The act of 1893 authorizes action on the petition of the directors of a corporation organized thereunder, or a majority of them. The act of 1894 requires a petition of the corporation desiring to construct, operate and maintain a railroad on the streets of the municipality. The former requires that the proper municipal body shall give notice to all parties interested by publication in one or more newspapers published and circulating in the municipality, or, if none published there, then by posting in five most public places, at least fourteen days before the meeting, of the time and place when it will consider the application for a location of tracks; the latter requires notice of the application to be given by publication in one or more newspapers published or circulating in the municipality, and by posting in five most public places, at least fourteen days before the meeting at which the application will be considered, and expressly prescribes what the notice shall contain. The former gives authority to grant or refuse the location after a hearing; the latter gives authority, on the day fixed by the notice or on a subsequent day to which the hearing of the petition may be adjourned, to grant or refuse the permission asked for, and, therefore, impliedly requires the hearing which the act of 1893 expressly requires.

Prosecutor, among other things, contends that the ordinance before us was passed without the required notices and hearing, and, therefore, without authority.

It appears by the return that on July 26th, 1894, defendant presented to the city council of Camden a petition which set out, *in extenso,* a previous application presented by it on June 1st, 1893, to the board of public works of that city, and after stating that the board had never acted on the petition, and had been abolished, and the control of the streets had again vested in the council, prayed that the application might be

granted and its tracks located in conformity with the petition to the board. As that petition antedated the act of 1894, and was by its terms limited to a location of tracks, the application to the council to grant its prayer is not the petition required by the act of 1894, which alone can authorize the grant of permission to construct, operate and maintain a street railroad. The ordinance, at least in its grant of permission, is not supportable upon the petition presented July 26th, 1894.

At the meeting of that day a resolution was adopted by council, directing the city clerk to publish notice of a meeting on August 30th, when the council would consider the application of defendant for a location of routes and hear the parties interested. This notice was not published as required and, by the advice of the city counsel, further proceedings under it were abandoned.

At a meeting on August 30th, defendant presented a petition to council, asking for a location of its tracks under the act of 1893, and also asking permission to "lay tracks" to be operated as street railways.

It does not clearly appear, but I think it may be inferred, that this petition was made both by the defendant corporation and by a majority of its directors, and its terms indicate a request for the action of council, both under the act of 1893 and under that of 1894, although the latter act is not referred to therein.

Assuming this petition to have such force, it obviously empowered council to give the notices required by each act. But it is equally obvious that it gave no power to council to act on the application until after notice and hearing.

In passing, I may say that I do not perceive any reason why defendant could not apply by one petition for the action of council under both acts, nor why notice of hearing could not include both purposes, provided it conformed to the requirements of both acts, nor why council could not exercise their authority under both acts by a single ordinance. This point, however, was not argued, and no opinion need be

expressed.    It will be assumed that such a mode of procedure would be unobjectionable.

Notwithstanding council, on August 30th, had acquired the right to give notice of hearing, it took no action to that effect.    But the ordinance now before us was, at that meeting, introduced and passed its first reading.

This action of council was, in my judgment, wholly without authority.    Its right to act at all upon defendant's application was dependent upon a proper notice duly published, and a hearing duly accorded upon such notice.    It could take no step, such as this was, until after a hearing.    As by the rules of council a first reading is essential to the due passage of an ordinance, it follows that the ordinance cannot stand.

But if I err in this conclusion, the subsequent proceedings clearly establish the invalidity of the ordinance.

At a meeting on September 27th, a resolution was adopted directing the city clerk to cause notice to be published of a meeting to be held at eight o'clock in the evening on October 18th, to consider defendant's petition for the " location of its tracks and routes," and to hear all persons interested.

It is to be observed that a notice given in the terms of this direction would not conform to the requirements of the act of 1894.    The notice is not contained in the return, and it is further observable that, while affidavits showing a publication of some notice were marked as exhibits for identification, and have been printed in the book, the notice has not been printed and its contents are not before us.

Assuming, however, that the notice conformed to the requirement of the acts and was duly published, it is established beyond any doubt that at the meeting of October 18th the council gave no hearing to parties interested, although representatives of prosecutor were present and waiting to be heard, and that it took no action upon defendant's petition, nor did it adjourn the hearing to a subsequent day.    That council must exercise its authority either on the day fixed for hearing or on a day to which the hearing is adjourned, is expressly required by the act of 1894, and is probably implied from

the terms of the act of 1893. The plain purpose of these requirements is to enable persons interested to continue attendance so long as the hearing lasts and until a final determination of the matter. These requirements will not be satisfied by a mere adjournment of council; there must be an adjournment of the hearing.

Notwithstanding no hearing was given, the ordinance was called up on second reading, when a point of order was interposed by a member, to the effect that notice having been given for a hearing on that day, the consideration of the ordinance was out of order, unless it was reintroduced. The president overruled the point of order, but upon an appeal from his decision by one member it was reversed. The ordinance was not reintroduced, and council adjourned.

By its failure to give a hearing to parties interested, at the time and place fixed by the notice assumed to have been given, and by its failure to adjourn the hearing to a subsequent day, the council, in my judgment, lost power to act upon the petition of defendant, except, perhaps, upon another notice duly published. It is not claimed that any other notice was given.

At a subsequent meeting held on October 25th, which was a regular stated meeting of council, the president, without any action of the council, ordered stricken from the minutes of the meeting of October 18th the appeal from and reversal of his decision before mentioned, on the ground that the appeal had been made by a single member, while the rules of council require three members to take such an appeal. The ordinance was thereupon taken up, amended in various particulars, and, having passed a second reading, was, on a third reading, finally adopted. This action, for the reasons above given, was futile and invalid.

It is, however, contended that a hearing of persons interested was given at the meeting of October 25th. If prosecutor had then been heard, it would, perhaps, be open to question whether the previous omissions of council had been so cured as to render the ordinance invulnerable to attack by prosecutor. But this question does not arise, for prosecutor was

not heard on October 25th, and it clearly appears that there was no hearing then. The minutes of council not only do not show a hearing, but do show that a hearing was denied. During a second reading of the ordinance, a point of order was made that action thereon was improper because no hearing had been allowed. The point was overruled. A communication from prosecutor was afterward received, read and ordered filed. It claimed, among other things, a right to be heard. A member moved that prosecutor's request for a hearing be granted, and this motion was ruled to be out of order because the " yeas and nays had been called for."

Counsel further insist that the recital in the ordinance that a hearing had been accorded must be taken to be true until overcome by proof. In my judgment it has been so overcome. It is clearly proved that no hearing was given on October 18th, when it ought to have been given. If a hearing on October 25th would avail in support of the ordinance, it cannot be pretended that council then offered a hearing within the terms of the acts in question. It is true that the president testifies that he announced that any person might be heard for three minutes only. If the president could speak for the council without its action, in making announcement of its readiness to hear persons interested, it is still plain that his announcement did not fulfill the requirements of the act. Courts may limit arguments, and the council, which in this regard was acting in a *quasi*-judicial capacity, could likewise limit persons appearing before it, but the limit must be reasonable. The president could not fix the limit for council, and the allowance of three minutes to present objections in a case of this sort was unreasonable.

The result is that, without considering any of the other questions presented by the reasons, I can find no way to support this ordinance, which must therefore be vacated and set aside, with costs.

Two other *certioraris* have brought before us two other ordinances passed in the same way. They present, therefore, the same questions, and having been argued with this case, the same result has been reached.