### TWIN FALLS CANAL CO. v. AMERICAN FALLS RESERVOIR DIST. NO. 2.

#### No. 6613.

Circuit Court of Appeals, Ninth Circuit.

May 23, 1932.

This appeal is to reverse an order of dismissal of the trial court.

The Snake river flows through a large body of public lands in the state of Idaho and makes water available for irrigation. This public domain was segregated by the Congress by the Federal Carey Act (43 USCA § 641 et seq.). See Twin Falls Salmon River Land & Water Co. v. Caldwell (C. C. A.) 242 F. 177.

One tract of the district is designated herein as "South Side Tract," the other "North Side Tract." The Twin Falls Land & Water Company, under contract with the state of Idaho, constructed Milner Dam and caused to be constructed a system to irrigate the South Side Tract, and also organized Twin Falls Canal Company, which was to and did take over the management and operation of the dam and irrigation system, including Milner Dam and Milner Lake. The irrigation system of the North Side Tract was constructed under like arrangement with the state by the Twin Falls North Side Land & Water Company and the North Side Canal Company, Limited, was formed to take over the management, operation, and ownership of the system. The dam across Snake river is 10 or 11 feet high, and the backwater from it extends up the river about 25 miles. To irrigate the respective tracts, water is taken out of the river on the north and south sides of the dam.

December 29, 1915, in an equity proceeding to which neither the United States nor the appellee was a party, the right to use the dam for checking and impounding the waters of the river, for purposes stated, was on stipulation of the Twin Falls Canal Company and the North Side Canal Company, Limited, decreed by the federal court for the district of Idaho in the Twin Falls Canal Company and the North Side Canal Company, Limited, and the interests of the respective parties was fixed at six-elevenths in the Twin Falls Canal Company and five-elevenths in the North Side Canal Company, Limited, and exclusive management and control of said dam was vested in the Twin Falls Canal Company.

The appellee, American Falls reservoir district No. 2, a gravity irrigation system, on commencement of this action was being constructed under a like arrangement with the

United States by contract of September, 1927. American Falls Reservoir District v. Thrall, 39 Idaho, 105, 228 P. 236; 43 USCA §§ 523–525; section 4468 Comp. Stat. Idaho, 1919. This system is to divert waters stored by the United States in the storage reservoir at American Falls and carried in the natural channel of Snake river to within 400 feet of the Milner Dam structure, where it is taken from the river for irrigation purposes through a gravity extension system.

Assumpsit is brought by appellant to recover from appellee the sum of $59,546, "as the initial cost, and the proportionate share of the moneys actually expended for maintenance and operation of said Milner Lake and Milner Dam based upon the use of said lake and dam by defendant herein."

The organization of the several irrigation companies and systems is pleaded, together with the assumption of all claims and damages of every nature and kind by appellee in paragraph 21 of its contract with the United States. Appellee's answer admits many of the allegations, but denies that it has operated the said irrigation system, or that it has taken any water from the river, and alleges that the construction is being done by the United States, and that the system has its heading upon unentered public lands of the United States which have been withdrawn from entry by the Secretary of the Interior pursuant to law. It affirmatively alleges that it is the owner by purchase from the North Side Canal Company, Limited, of an undivided one-eleventh interest in said Milner Dam and all rights in connection therewith; that practically all of the land flooded by the backwaters of said dam is unentered public land, and that the land upon which the headworks of said canal is constructed by the United States was prior to such construction and still is unentered public land, and was withdrawn from all forms of entry by the Secretary of the Interior pursuant to act of Congress of June 17, 1902 (32 Stat. 388, 43 USCA § 391 et seq. particularly section 416) and reserved for right of way purposes for canals or other irrigation works; that by reason of the purchase of one-fifth of said five-elevenths interest of the North Side Canal Company, Limited, there vested in appellee a proportionate interest in all rights in connection with said dam of the same character as the right of appellant, differing only from the right of appellant in the control which appellant has been permitted to exercise; and prays judgment.

Trial by jury was waived, and the court, after consideration of the testimony, made formal findings in which it found, so far as material here, that the corporate and semi-corporate status of the parties and corporate relation is as alleged; also, as alleged, that the contract between appellee and the United States contained, as paragraph 21, the following: "The District agrees to assume and pay, and herein and hereby now assumes and agrees to pay, all obligations and claims of every kind, nature and description, if any, which may arise and accrue in favor of any or all the legal or equitable owners of the Milner Dam by reason of the diversion of water through the main canal as herein provided, and to keep the United States harmless therefrom."

The court also found that no demand for contribution to costs of construction or maintenance has been made; that the gravity system has not been at any time complete or in operation; that the title vested in the United States, and that it was in charge of construction, etc.; that appellee had no voice or act in control; also, the several interests decreed by the federal court; the public character of the land and waters; the withdrawal of said public land from entry; the heading of appellee's canal about 400 feet above the dam; that it is not proposed to use the slack waters created by the dam, but water brought through the channel of the river from American Falls reservoir; that said construction is wholly upon unentered and unoccupied land; that appellee holds by purchase a one-eleventh interest in said dam, and that the various parties have diversion rights as follows:

Appellant: 3,600 second feet of the continuous natural flow of the waters of Snake river; 92,000 acre feet of water stored in the United States reclamation storage dam at Jackson Lake; 145,000 acre feet of water stored in the United States reclamation storage dam at American Falls.

North Side Canal Company: 3,300 second feet of the continuous natural flow of the waters of Snake river; 150,000 acre feet of water stored in the United States reclamation storage dam at American Falls.

Appellee: 400,000 acre feet of water stored in the United States reclamation storage dam at American Falls.

It found the total diversion rights held by all parties to be 5,824,000 acre feet per annum; that the American Falls storage reservoir, owned and erected by the United States, was built for the purpose of storing and conserving the surplus and unappropriated wa-

ters of Snake river, and has a storage capacity of 1,700,000 acre feet, and when completed will have a storage capacity of 3,000,000 acre feet; that there is intervening between the American Falls Dam and the Milner Dam a certain reclamation dam known as Minidoka Dam, constructed, owned, and operated by the United States for like purposes; that by the construction of Milner Dam the waters of Snake river are backed up for a distance of approximately 25 miles to the toe of Minidoka Dam; that any diversion of the waters stored in American Falls Dam for the irrigation of large tracts of land on the north and south sides of Snake river, including the project of the gravity extension unit of the Minidoka project, can, owing to the topography of the country, only be diverted from Snake river at some point within the slack waters created by Milner Dam; that no evidence was introduced by appellant to show, or tending to show, the value to appellee of the use of Milner Dam; that by the construction of the headworks of the canal of the gravity extension neither the United States nor the appellee has made or is making any use of said Milner Dam, but that it accepted conditions as it found them at the time of construction, and that the diversion through the headgates of said gravity extension unit of waters stored in American Falls reservoir and transported down the natural channel of Snake river and diverted some 400 feet above Milner Dam does not impose any additional stress, strain, or burden upon Milner Dam, and in nowise unreasonably interferes with the water right and diversion of water from Snake river by appellant; that at the time Milner Dam was constructed the land on which it was constructed and practically all of the lands flooded by the waters of said dam were unentered public lands of the United States, and the land upon which the headwork of said gravity system constructed by the United States was and still is unentered public land, and that prior to the construction of either of said projects said land was withdrawn from all forms of entry by the Secretary of the Interior, under authority of act of Congress of June 17, 1902, and reserved for right of way purposes for canals and other irrigation works to be constructed by the United States.

James R. Bothwell, of Twin Falls, Idaho, for appellant.

W. G. Bissell and Branch Bird, both of Gooding, Idaho, and B. E. Stoutemyer, of Portland, Or., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

NETERER, District Judge (after stating the facts).

Two questions are presented: First, is American Falls reservoir district No. 2 a party in interest—the proper party defendant?

It is obvious from the findings of fact and the record that not only is title to the system in issue in the United States, but that it has exclusive control and entire supervision of construction and will have until the project is completed, and the management and operation will remain in it until otherwise provided by the Congress. 43 USCA §§ 498, 523, 524. Livanis v. Northport Irr. Dist., 121 Neb. 777, 238 N. W. 757; Id., 120 Neb. 314, 232 N. W. 583.

Appellee has had no power over, or voice, control, or power in the management, control, or operation of the works or project, and no conceivable theory is pointed out, nor is such known to the court, how trespass of the United States in such construction, maintenance, or operation can be charged against appellee. Malone v. El Paso County Water Imp. Dist. No. 1 (Tex. Civ. App.) 20 S.W. (2d) 815. There is no distinction between the principle involved in the Malone Case and that involved in the instant case. The maintenance, operation, control, etc., in each case was in the United States, and section 6 of the Federal Reclamation Act (43 USCA §§ 491, 498) applies to each. The findings, supported by the evidence, are conclusive that appellee had not succeeded to the management, operation, or control; and that is the decisive factor. The nature of the claim is not material. No liability against appellee is established.

Nor do the provisions of section 21 of the contract between appellee and the United States change the actionable relation. The most favorable construction would make appellee surety to the United States, and subject it to no greater liability than accrued against the United States, and grant to the United States the right to sue appellee as one for whose benefit the provision was made. 21 R. C. L. 974, 975.

"A surety is 'a favored debtor.' * * * His contract exactly as made is the measure of his liability; and, if the case against him be not clearly within it, he is entitled to go acquit." Magee v. Manhattan Life Ins. Co., 92 U. S. 93, 98, 23 L. Ed. 699. See, also,

City of Pocatello v. Fargo, 41 Idaho, 432, 242 P. 297, 307.

Section 5662, Comp. Stat. Idaho, on which appellant relies, provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

The contract referred to must be taken as a whole, and the concluding words of paragraph 21 thereof, "to keep the United States harmless therefrom," must control. The limitation is specific. Appellant was not a party to the contract. Nor was benefit expressly, distinctly, or explicitly to accrue to it. No intention of the parties to secure to appellant personally the benefits of this provision appears. There is nothing indicative that appellee and the United States had in view any other party or parties, or any other thing or person except their own advantage. Sayward v. Dexter, Horton & Co., 72 F. 758, 765 (C. C. A. 9). The contract is under seal, and appellant, not being in privity with either party, and it not being expressly made for appellant's benefit, can claim no right thereunder.

"The rule that may be formulated under the federal decisions permits a third person not a party to a contract to enforce the promisor's obligation only where he is the beneficiary solely interested in the promise." In re Gubelman (C. C. A.) 13 F.(2d) 730, 731, 48 A. L. R. 1037. See, also, Evans v. Sperry (D. C.) 12 F.(2d) 438, 440; Hendrick v. Lindsay, 93 U. S. 143, 23 L. Ed. 855; Cavanaugh Bros. Horse Co. v. Gaston, 255 Mass. 587, 152 N. E. 623, 47 A. L. R. 1.

The foregoing shows affirmance. But, in view of the issue involved and the voluminous record, we follow Judge Cavanah, who tried the case, and proceed to consider the merits, and the second question: Does appellee transgress any right of appellant?

"The right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses, shall never be denied." Article 15, § 3, Constitution of Idaho.

The south, north, and appellee districts each have appropriated water for beneficial uses. The trial court recognized the right of appellant to the volume of water actually appropriated for beneficial purposes, and the right to all water actually appropriated, diverted, and used. The extent of beneficial use is an inherent and necessary limitation upon the right. There is no contention at bar or in brief that appellant is deprived of any water within a claim of right or at all.

But contention is made that, but for the dam, the water in the river would not be raised to such level of the base of the diversion canal as to enable the government, or appellee, to divert any of the waters of the river; and for the benefits thus obtained appellee should contribute to the cost of construction and maintenance. If this contention is sound, the purpose of the laws (Comp. Stats. Idaho, §§ 5556, 5559, 5606) would be defeated and appellant would have the controlling interest of the river for 25 miles of slack water upstream, irrespective of beneficial use, and the policy of the state to reserve the waters of the river for public benefit would be defeated and result in such monopoly as to work disastrous consequences to the public good. Appropriation is not an unrestricted right, but a right which must be asserted with relation to the rights of the public; and to the extent that appellant has appropriated the water for beneficial uses the right has accrued and vested and appellant must be protected in the enjoyment thereof. Basey v. Gallagher, 87 U. S. (20 Wall.) 670, 22 L. Ed. 452. It would render meaningless section 5624 of the Compiled Statutes of the state, granting permission, on compliance with stated conditions, to use the bed and/or natural water course of Snake river for carrying the stored waters from American Falls reservoir and the Minidoka project.

The trial court found for appellee, and, we think, in harmony with the law of Idaho and with the intent of section 946, title 43 USCA, which limits the right to the extent of the ground occupied by the reservoir and canals and laterals, and provides that: "The privilege herein granted shall not be construed to interfere with the control of water for irrigation and other purposes under authority of the respective States or Territories." 43 USCA § 946.

And section 949, title 43, USCA, provides that: "Nothing in sections 946 to 949, inclusive, shall authorize such canal or ditch company to occupy such right of way except for the purpose of said canal or ditch, and then only so far as may be necessary for the construction, maintenance, and care of said canal or ditch."

The provision of this section embraces, no doubt, the reservoir and entire property. United States v. Big Horn Land & Cattle Co. (C. C. A.) 17 F.(2d) 357, 365; United States v. Tujunga Water & Power Co. (C. C. A.) 48 F.(2d) 689, 692.

In Hutchinson v. Watson Slough Ditch Co., 16 Idaho, 484, 101 P. 1059, 133 Am. St.

Rep. 125, the court held that an acquired easement (as is appellant's right) does not give the holder exclusive private control, or authorize obstruction of such highway to the use of other persons.

In Doherty v. Pratt, 34 Nev. 343, 124 P. 574, it was held that an appropriator of water has no right in appropriating a portion of a natural stream to divert the entire stream or assert a right to the exclusion of others. By the same token, the only right which appellant possessed is commensurate with its right to the water appropriated to beneficial use, and it can complain only when the act of another deprives it of a valid right in waters appropriated for a beneficial purpose, and it may not withhold waters from appropriation by another for beneficial use.

Section 372, title 43, USCA, provides that: "The right to the use of water acquired under the provisions of the reclamation law shall be appurtenant to the land irrigated, and beneficial use shall be the basis, the measure, and the limit of the right."

See, also, Hayward v. Mason, 54 Wash. 649, 104 P. 139; Glavin v. Salmon River Canal Co., 44 Idaho, 583, 258 P. 532; Natoma Water & Mining Co. v. Hancock, 101 Cal. 42, 31 P. 112, 35 P. 334.

■ Appellant's right is limited to the dam and the right to divert for beneficial use appropriated water, and no incidental right except such as is reasonably necessary to its enjoyment. It has no exclusive right to the water course below the head of slack water above the dam. There is no need therefor to the enjoyment of the easement; and it may not deprive others of asserting the right, or infringe upon fixed rights of appropriation by others. The land being public, reserved (see sections, supra), and the laws granting to appellee a right of way in the river to carry the water from the reservoirs above, and the right of diverting the volume thereof by its gravity system, until the diversion conflicts with the appropriated right of appellant and deprives it of necessary waters appropriated for public use, no right is infringed.

It may also be said that the purchase of one-eleventh interest in Milner Dam by appellee from the North Side Canal Co., Limited, which had a right to sell it to any person (Anderson v. Carrigan, 50 Idaho, 550, 298 P. 673), gave to appellee a common undivided (one-eleventh) interest. Sections 5328, 5372, Comp. Stat. Idaho. Thereupon appellee became a tenant in common with appellant and the North Side Canal Company, Limited (except that appellant, by decree in equity, has control, management, etc.), and became entitled to one-eleventh interest in the dam and water rights. The water right of appellant is approximately 2,500,000 acre feet per annum; of the North Side Canal Company, practically an equal right; and of appellee, 400,000 acre feet per annum. The basis of interest must be measured by water right; and we conclude that appellee has by purchase paid for such interest at the point of diversion as would not afford any relief in this action.

■ Nor does the Fifth Amendment apply. The immunity to property afforded by the Fifth Amendment does not inhibit incidental consequences of lawful and proper exercise of governmental power for the common good. Gibson v. United States, 166 U. S. 269, 17 S. Ct. 578, 41 L. Ed. 996. See, also, Bedford v. United States, 192 U. S. 217, 24 S. Ct. 238, 48 L. Ed. 414; Horstmann Co. v. United States, 257 U. S. 138, 42 S. Ct. 58, 66 L. Ed. 171; Omnia Commercial Co. v. United States, 261 U. S. 502, 43 S. Ct. 437, 67 L. Ed. 773. The trial court found there was no taking, and this is supported by substantial evidence. Common understanding indorses expert comprehension of the witness who said: "The additional burden would be merely one more headgate to operate, the same as you install any headgate any place there on the river."

The right of the United States to its activity in the instant matter is not challenged. The land is used under claim of ownership and the United States may not be held upon implied obligation to pay. Langford v. United States, 101 U. S. 341, 25 L. Ed. 1010; Hill v. United States, 149 U. S. 593, 13 S. Ct. 1011, 37 L. Ed. 862.

In Tempel v. United States, 248 U. S. 121, at page 129, 39 S. Ct. 56, 59, 63 L. Ed. 162, it is said: "As stated in United States v. Lynah, 188 U. S. 445, 462, 465, 23 S. Ct. 349, 354 (47 L. Ed. 539): 'The law will imply a promise to make the required compensation, where property to which the government asserts no title, is taken, pursuant to an act of Congress, as private property to be applied for public uses.'"

If recovery could be had, it would be limited to the damages caused to its property having no relation to benefit accruing to appellee. Tanner v. Provo Bench Canal & Irrigation Co., 40 Utah, 105; 121 P. 584, affirmed, 239 U. S. 323, 36 S. Ct. 101, 60 L. Ed. 307; Salt Lake City v. East Jordan Irrigation Co., 40 Utah, 126, 121 P. 592.

In Tanner v. Provo Bench Canal & Irrigation Co., supra, 40 Utah, 105, 121 P. at page 589, the court said:

"Under such circumstances, the measure of damages was the 'extent to which it (the easement) was rendered less valuable for the uses to which it was devoted.' 2 Lewis, Eminent Domain (3d Ed.) § 723, and cases there cited. The question, therefore, is, To what extent is the value, or the value of the use, of appellants' canals reduced by enlarging them to the extent and for the purpose permitted by the trial court? * * *

"They are limited in their recovery by the amount of damages suffered by them. They cannot recover for any benefit respondent may receive."

See, also, C., B. & Q. v. Chicago, 166 U. S. 226, 17 S. Ct. 581, 41 L. Ed. 979; Clayton v. Gilmer County Court, 58 W. Va. 253, 52 S. E. 103, 2 L. R. A. (N. S.) 598; City of Lewiston v. Brinton, 41 Idaho, 317, 239 P. 738.

The exceptions to the findings have not been discussed seriatim, because no useful purpose would be served by unduly extending this opinion. Suffice it to say, there is substantial testimony to support the findings of the trial court. The trial court was in a position to weigh the testimony, to observe all that makes for credibility of witnesses, and its findings are binding upon this court. While there may be in one or two instances, due to typographical errors, misapprehension, or slight differences in figures, or with relation to acreage or reservoir capacity, even though appellant should be correct as to these particular exceptions, it would be immaterial and have no bearing upon our conclusions. The cases cited by appellant have been examined and considered, but are either not persuasive or clearly distinguishable.

Affirmed.